## Demczuck Estate

*I. Louis Rubin,* for executor.

*William R. Cameron, Jr.,* and *Ostroff, Anderson & Lawler,* for exceptant.

BIESTER, P. J., August 17, 1956.—John Demczuck (sometimes known as Ivan Demczuk, John Demchuk or John Demchick), died a resident of this county on October 26, 1947, leaving a last will and testament dated August 8, 1938, devising his remainder estate to his son named in the will as "Hrihori Demianchuk". The will further provides that should this son predecease testator, testator's grandson and son of Hrihori Demianchuk should be substituted. Should both the son and grandson predecease testator, then the residuary estate is devised to the wife of Hrihori Demianchuk. All of the remaindermen, that is to say, the son, grandson and daughter-in-law would appear to be residents of the Union of Soviet Socialist Republics.

The will having properly been lodged for probate and the account of the executor, Farmers National Bank of Bucks County, setting forth a balance for distribution of $7,171.19, having been filed, the executor petitioned the court for the appointment of an

auditor, in order that it might be determined to whom the fund should be distributed, and especially whether the terms of the Act of July 28, 1953, P. L. 674, 20 PS §§1155-1159, should be invoked.

This act provides, in part, that: "Whenever it shall appear to the court that if distribution were made a beneficiary would not have the actual benefit, use, enjoyment or control of the money or other property distributed to him by a fiduciary, the court shall have the power and authority to direct the fiduciary (a) to make payment of the share of such beneficiary at such times and in such manner and amounts as a court may deem proper, or (b) to withhold distribution of the share of such beneficiary, convert it to cash, and pay it through the Department of Revenue into the State Treasury without escheat."

The State treasury then becomes the custodian of the money for the benefit of the beneficiary and such beneficiary may at any time petition the court which directed such payments, requesting repayment of the fund to which he then becomes entitled upon proof that he will have the actual possession, benefit, use, enjoyment or control of such money.

One of the hearings before the auditor was attended by Isidor Ostroff, Esq., of the Philadelphia bar, who presented a power of attorney purportedly signed by Grigory Ivanovich Demianchuk, which power designates the law firm of Wolf, Propper, Ross, Wolf & Jones, attorneys of New York City, as Demianchuk's attorneys-in-fact, to represent his interest in the estate of decedent and to engage the services of corresponding attorneys or local counsel as might be deemed necessary. We may here interpolate that the various spellings of the son's name are probably due to transliteration of language. This power of attorney is in Russian accompanied by an English translation. Subsequent to the hearing before the auditor, an additional

power of attorney in Russian, accompanied by an English translation, was forwarded to the auditor. It is purportedly signed and acknowledged by Grigory Ivanovich Demianchuk before one I. B. Konzhukov, Assistant Chief of the Consular Administration of the Ministry of Foreign Affairs for the U. S. S. R. It is certified by the vice consul of the United States at Moscow to the effect that I. B. Konzhukov was, at the time of the taking of the affidavit, duly commissioned and qualified to take the oath.

The auditor has filed a report authorizing the payment of the funds in question to the State treasury through the Department of Revenue, in accordance with the Act of July 28, 1953, heretofore referred to. Mr. Ostroff has filed exceptions to the auditor's report, contending that the auditor was in error in a number of his findings and conclusions, which need not here be recited. The gist of the exceptions is to the effect that the fund should have been awarded to the son through his attorney-in-fact.

In order properly to appraise the situation we must refer briefly to the testimony produced before the auditor. It there appears that the executor, on March 12, 1948, received a letter from one Charles Recht, Esq., a member of the New York bar, advising the executor that he represented the consul general of the U. S. S. R. and that he was acting on behalf of the son of the decedent. On March 23, 1948, Mr. Recht wrote to counsel for the executor to the effect that he expected to receive, within a short time, a power of attorney and proof of kinship from the son. On October 11, 1948, another letter was received from Mr. Recht advising counsel that he had not yet received the power of attorney. The next communication from Mr. Recht was on April 5, 1950, when Mr. Recht again wrote advising counsel for the executor that he was still trying to locate the heirs of decedent. On April 4, 1950, the attor-

ney for the executor wrote a registered letter to the son with return receipt requested, addressing it to the address set forth in the will, advising him of his father's last will and asking him to acknowledge receipt of the letter. The return receipt was signed on April 22, 1950, and eventually returned to counsel. A letter dated May 7, 1950, purportedly signed by the son and written in English, was received by counsel for the executor. The letter stated that all persons mentioned as having an interest in the estate were alive and asking the attorney for the executor to protect his interest. The next communication received by counsel for the executor was dated July 27, 1954, and was from Wolf, Propper, Ross, Wolf & Jones, attorneys of New York City, acknowledging, on behalf of the legatees, the notice of the filing of the account. It was not until a second hearing before the auditor, on December 2, 1954, that a power of attorney was produced, this being in favor of Wolf, Propper, Ross, Wolf & Jones, attorneys, and dated August 22, 1954. The second power of attorney dated August 23, 1954, and certified by the vice consul of the United States at Moscow on October 22, 1954, was received by the auditor subsequent to the hearing of December 2, 1954.

We find little distinction between the situation confronting the auditor and this court and the problem resolved by Judge Klein in Sobko Estate, 88 D. & C. 76. There the court took judicial notice of the lack of private rights of property behind the "iron curtain" and held that, in the absence of positive and convincing assurances the heirs of decedent would receive the actual use, benefit, enjoyment and control of funds which might be awarded to them, the fund should be paid through the Department of Revenue into the State treasury in compliance with the Act of July 28, 1953.

We are in accord with the opinion of Judge Klein and, although counsel for claimant attempts to dis-

tinguish the Sobko case from the case now before us, we find that whatever distinctions do exist are not of sufficient import to justify our reaching a conclusion different from that of Judge Klein. Counsel argues that in the Sobko case there was no proof as to the authenticity of documents, nor the existence of claimants. However, Judge Klein states in his opinion that the powers of attorney submitted in the Sobko case appeared to be in proper form and are verified by the United States consul stationed in Moscow. In both that and the present case, we have no assurance, however, that the powers of attorney were signed by claimant and, if they were, the circumstances under which the signatures were obtained. It appears to be significant that counsel required over six years to obtain such authority.

Apparently it is the position of counsel for the alleged heir that the similarity of the signatures on the return receipt dated April 22, 1950, and the powers of attorney should be sufficiently convincing to the auditor and this court to justify a finding of the existence and identification of the heir. He overlooks the fact that there has been introduced in evidence a letter purporting to come from the son, the signature to which is completely dissimilar to the other signatures. In addition, the fact the other signatures are similar does not establish that any signature was affixed by the heir, or the circumstances under which any of such signatures were obtained. None of the signatures has been identified as being that of claimant of the fund. An argument that because a person unknown to the court has signed several documents with signatures that are similar establishes that each of the signatures is authentic and fixes the identity of the party signatory is, of course, untenable.

Counsel for claimant also attempts to establish the law of the U. S. S. R. by having read into the record

extracts from American publications regarding the law of inheritance of the U. S. S. R.

We do not take judicial notice of the law of jurisdictions outside of the United States: Uniform Judicial Notice of Foreign Law Act of May 4, 1939, P. L. 42, sec. 5, 28 PS §295; Lyon Trust, 164 Pa. Superior Ct. 140, 145. This being so, the burden was thrust upon claimant to establish such law. As to the approved method of establishng the laws of foreign countries: See Henry's Pennsylvania Evidence, vol. I, §363; Bank of America National Trust & Savings Association v. Sunseri, 311 Pa. 114, 119; Demas v. Harvouros, 99 Pitts. L. J. 177. In addition, the publications to which reference was made are not current and the record is devoid of any statement that the law referred to in these publications was in effect at the time of the hearing.

From the record as a whole, we are not sufficiently convinced of either the identity factor or the fact that claimant, if he be the son of decedent, would have the actual benefit, use, enjoyment or control of his distributive share to justify our directing that the corpus of the estate be paid to him at this time. This is not a final determination of his rights, for the act in question permits claimant to petition this court requesting payment of the fund and upon proper proof of his right thereto and that he will have its use without restriction, he would become entitled to it. The sum involved is not inconsequential and it may be that the proper officials of the U. S. S. R. will permit his presenting such proof in person.

The claim for counsel fees presented by the attorney for claimant is disallowed.

Judge Rubin did not participate in this decision.

And now, to wit, August 17, 1956, the exceptions to the report of the auditor are dismissed and the auditor's report is confirmed.